**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NEWRY LIMITED,

                    **Plaintiff,**

            v.

U.S. CUSTOMS AND BORDER
PROTECTION BUREAU,

                    **Defendant.**

**Civil Action 04-02110  (HHK)**

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Newry Limited ("Newry"), brings this action against the U.S. Customs and

Border Protection Bureau ("CBP") under the Freedom of Information Act ("FOIA"), 5 U.S.C. §

552, *et seq.*, seeking the release of certain records within CBP's control.  Before the court are the

parties' cross-motions for summary judgment [#9, #13].  Upon consideration of the motions, the

respective oppositions thereto, and the record of this case, the court concludes that each motion

must be granted in part and denied in part.

**I. BACKGROUND**

**A.      Relevant Facts**

Newry is a Chinese merchandise exporter.  On June 6, 2003, CBP's Fines, Penalties and

Forfeitures ("FP&F") Director sent Newry a letter stating that Newry's merchandise had been

seized at the port of Los Angeles, California, on April 17, 2003.  CBP assigned case number

2003-2704-000461 to the seizure, and explained that the merchandise had been seized because

while the shipping information stated it was to be exported to Mexico, the merchandise was

actually marked for sale in the United States.  In order to prepare a petition for release of the

merchandise pursuant to 19 U.S.C. § 1618, Newry, through its counsel, submitted a FOIA

request to CBP on September 3, 2003 for disclosure of records pertaining to its case.

After the FP&F Officer twice denied the request, Newry appealed to the agency's

Disclosure Law Branch of the Office of Regulations and Rulings on January 5, 2004.  On

December 23, 2004, CBP responded to the appeal by releasing twenty-four partially-redacted

responsive documents.  CBP also withheld nineteen responsive documents in their entirety under

FOIA exemptions, and an additional sixteen pages because they were duplicates of other

documents.  CBP withheld and redacted the documents at issue pursuant to FOIA Exemptions 2,

4, 5, 6, 7(A), 7(C), and 7(E).  In order to justify its withholdings, CBP provided Newry with a

letter from Joanne Roman Stump, Appeals Officer and Branch Chief of the Disclosure Law

Branch, International Trade Compliance Division, Office of Regulations & Rulings, CBP.

Defendant has submitted an official declaration ("Stump Declaration") containing parts of this

letter.

B.      **Legal Framework**

Congress enacted FOIA to afford citizens a statutory right of access to government

records and information.  *FBI v. Abramson*, 451 U.S. 615, 621 (1982).  While FOIA requires

agencies to disclose information to the public, Congress acknowledged that "legitimate

governmental and private interests could be harmed by release of certain types of information."

*Id.*  In order to balance these competing interests, Congress set forth nine exemptions to FOIA

which an agency may invoke to properly withhold information.  *See* 5 U.S.C. § 552(a)(4)(B),

(b)(1)-(9).  Since disclosure is the primary purpose of FOIA, "the Exemptions must be narrowly

construed and the burden of demonstrating that these strictly defined Exemptions apply to a

particular case rests with the agency." *Hornbostel v. Dep't of the Interior*, 305 F. Supp. 2d 21,

29 (D.D.C. 2004).  This burden may be satisfied "by providing the requester with a *Vaughn*

index,[1] adequately describing each withheld document and explaining the Exemption's

relevance." *Gutman v. Dep't of Justice*, 238 F. Supp. 2d 284, 290 (D.D.C. 2003).

A FOIA action may be resolved through summary judgment "when the pleadings together

with the declarations show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." *Id*. (citing FED. R. CIV. P. 56(c));

*Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 247 (1986); *Alyeska Pipeline Serv. Co. v. EPA*,

856 F.2d 309, 313 (D.C. Cir. 1988); *Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir.

1980).  FOIA provides for *de novo review* by the district court and places the burden on "the

agency to sustain its action."  5 U.S.C. § 552(a)(4)(B).  The agency may meet this burden by

submitting affidavits or declarations that describe the withheld material in reasonable detail and

explain why it falls within a FOIA exemption. *See Summers v. Dep't of Justice*, 140 F.3d 1077,

1080 (D.C. Cir. 1988).

## II. ANALYSIS

Newry concedes that CBP properly applied Exemptions 6, 7(C), and 7(E), but challenges

CBP's withholdings under Exemptions 2, 4, 5, and 7(A).  Newry also contests the adequacy of

---

[1] The *Vaughn* index is a "system of itemizing and indexing that [ ] correlate[s] statements made in the Government's refusal justification with the actual portions of the [withheld] document." *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).

CBP's search, the sufficiency of the *Vaughn* index, the segregability of withheld documents, and Newry's status as a third-party requester.[2]

## A.      Adequacy of Search

Newry initially alleges that CBP's search of the administrative seizure case file was inadequate because the agency did not search other databases.  Under FOIA, an agency must perform a search that is "reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351; *The Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (quoting *Weisberg*, 705 F.2d at 1351*)*.  Although "[t]here is no requirement that an agency search every record system . . . the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  If the adequacy of a search is challenged, the agency must provide "[a] reasonably detailed affidavit setting forth the search terms and type of search performed, and averring that all files likely to contain responsive materials were searched . . . ." *Id.*

Newry concedes that "the administrative seizure case file is the logical location for the responsive records." Pl.'s Mot. at 3.  However, Newry still contends that the Treasury

---

[2]  CBP categorizes Newry as a "third-party requester" rather than a "first-party requester" because "in the context of FOIA [a first-party requester] is a party who itself submitted information to CBP . . . [i]n this case, however, all such documents . . . were prepared and submitted by entities other than Plaintiff." Supplemental Stump Decl. ¶ 7.  FOIA does not catagorize requesters as first-party or third-party. *See* 5 U.S.C. § 552 *et seq.*  Rather, FOIA requires that each agency "make [information] available to *the public* . . ." 5 U.S.C. § 552(a) (emphasis added).  Accordingly, the information released to Newry should not depend on its relationship to the documents requested.  Indeed, CBP itself concedes that "Plaintiff's [s]tatus is [i]mmaterial . . ." Def.'s Reply at 5.  Thus, this court will examine CBP's claimed exemptions from the perspective of the public, and will not be influenced by Newry's status as a first-party or third-party requester.

Enforcement Computer System ("TECS"), the Seized Asset and Case Tracking System

("SEACATS"), and the Automated Commercial System ("ACS") should have been searched.  In

response to Newry's contention, CBP states that all relevant records from SEACATS, a module

within TECS, are included in the administrative seizure case file.  Accordingly, conducting a

separate search of the SEACATS module within TECS would have been repetitive and

unnecessary.  Furthermore, Newry's contention that the ACS database should have been searched

is without merit.  CBP's *Vaughn* index states, under the document description column, that

certain documents are from ACS.  This demonstrates that CBP also examined the ACS database

through the search of the administrative seizure case file.  As Newry agrees that the

administrative seizure case file is the "logical location" for responsive documents, and CBP's

evidence demonstrates that it also searched all other relevant databases, the agency's search was

reasonable and adequate.

**B.     Exemption 2**

Exemption 2 allows withholding records that are "related solely to the internal personnel

rules and practices of an agency."  5 U.S.C. § 552(b)(2).  Courts have separated Exemption 2 into

"low 2" and "high 2" information.  The "low 2" Exemption is used for materials related to trivial

administrative matters which are of no genuine public interest and "high 2" is used for

information relating to substantial internal matters "the disclosure of which would risk

circumvention of agency statutes and regulations . . . ."  *Schiller v. NLRB*, 964 F.2d 1205, 1207

(D.C. Cir. 1992).

Newry contends that because CBP has not specifically identified which redactions and withholdings are high and low Exemption 2, "it is impossible to identify which redactions to dispute." Pl.'s Mot. at 4.[3] Newry states "it does not appear that any of the (b)(2) redactions are important to plaintiff . . ."[4] but still contests CBP's manner of applying Exemption 2. *Id.* at 5. CBP's *Vaughn* index does not specifically identify whether the redactions and withholdings are exempt under "high 2" or "low 2." However, the index does state that the material withheld under Exemption 2 is either internal computer codes, internal computer screen instructions, or internal agency operational procedures. Def.'s Mot., Exs. A, B. The Stump Declaration then explains that "low 2" information "consists of administrative markings [ ] relating to internal agency file control systems . . . ." Stump Decl. ¶ 22. The "high 2" information "consists of such things as the administrative procedures in regard to the operational responsibilities discussed and assigned to CBP personnel . . . ." *Id.* ¶ 24. Reading the *Vaughn* index together with the Stump Declaration "reveals that Exemption 2 was applied to two categories of information that are easily identifiable as either 'low(b)(2)' or 'high(b)(2)' without the necessity of attaching specific labels." *Changzhou Laosan Group v. U.S. Customs and Border Prot. Bureau*, 2005 WL 913268, at *9 (D.D.C. Apr. 20, 2005) (holding that exemption 2 was properly applied even though the *Vaughn* index did not specify which documents were withheld and redacted pursuant to the "high

---

[3] Exemption 2 was applied to documents NL 001 - 004, 025, 026, 033, 034, and 042. Def.'s Mot., Exs. A, B.

[4] Newry notes that it already has access to certain Exemption 2 redactions (i.e. Bill of Lading information at documents NL 002 - 004). Pl.'s Mot. at 5. However, plaintiff points to information in these pages that was redacted under Exemption 4; the appropriateness of these redactions is discussed in the Exemption 4 section.

2" or "low 2" exemption).[5]   Since Newry is not contesting the substance of the Exemption 2

redactions, and CBP's pleadings adequately identify "high 2" and "low 2" redactions, this court

concludes that CBP properly withheld information under Exemption 2.

**C.      Exemption 4**

Exemption 4 protects "(i) commercial or financial information (ii) obtained from a person

(iii) that is privileged or confidential." *Public Citizen Health Research Group v. Food and Drug

Admin.*, 964 F. Supp. 413, 414 (D.C. Cir. 1997) (quoting *Nat'l Parks & Conservation Ass'n v.

Morton*, 498 F.2d 765, 769 (D.C. Cir. 1974)); 5 U.S.C. § 552(b)(4).  Exemption 4 serves the dual

purpose of "(1) encouraging cooperation by those who are not obliged to provide information to

the government and (2) protecting the rights of those who must." *Critical Mass Energy Project

v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 873 (D.C. Cir. 1992) (quoting *Nat'l Parks*, 498

F.2d at 769).  The latter category of information is referred to as involuntary or compelled

information, and is afforded a lesser degree of protection than voluntary information as "the

Government's interest is not threatened by disclosure [of involuntary information] because it

secures the information by mandate . . . ." *Critical Mass*, 975 F.2d at 878.   The same is not true

for voluntary information, because "[the Government's] interest will be threatened by disclosure

as the persons whose confidences have been betrayed will, in all likelihood, refuse further

cooperation." *Id.*  CBP's pleadings state that documents withheld under Exemption 4 were

"required" to be provided to the agency.  Def.'s Mot. at 14.  Accordingly, this court will apply

---

[5]   The facts of *Changzhou* are almost identical to the facts of the present case.  The plaintiff in *Changzhou* is also a Chinese merchandise exporter who submitted a FOIA request to CBP for release of documents pertaining to the seizure of its merchandise on April 17, 2003. *Changzhou*, 2005 WL 913268, at *1.  CBP released some of the documents and withheld others pursuant to FOIA exemptions.

the less stringent standard for disclosure as outlined in *National Parks*.[6]  Involuntary information

is afforded the protection of Exemption 4 if its disclosure would "(1) [ ] impair the Government's

ability to obtain necessary information in the future or (2) [ ] cause substantial harm to the

competitive position of the person from whom the information was obtained." *Nat'l Parks*, 498

F.2d at 770.

Documents withheld by CBP pursuant to Exemption 4 include (1) entry documents and

(2) other documents containing commercial information.[7]  The entry documents in question are

Customs Forms 7512 ("CF 7512s") and contain information such as "the identification of the

manufacturer, shipper, consignee, brokers, freight forwarders, description of the merchandise,

quantity, value, [and] entry numbers . . . ." Stump Decl. ¶ 29.  The other commercial documents

include sensitive commercial and financial information including from whom the merchandise

was purchased, merchandise quantity and value, the exporters' customers, and description of the

exporters' business operations and organization. *Id.* ¶ 33.  CBP relies solely on the Stump

Declaration and cites to unpersuasive authority to conclude that disclosing this information

---

[6]  The *National Parks* test was also applied in *Changzhou* to determine the validity of CBP's Exemption 4 withholdings. *Changzhou*, 2005 WL 913268, at \*4.  However, CBP then filed for a motion for reconsideration and introduced evidence that some of the Exemption 4 information was voluntarily provided to CBP. *Changzhou Laosan Group v. United States Customs & Border Prot. Bureau,* 2005 WL 1415566, at \*1 (D.D.C. June 17, 2005), --- F. Supp. 2d --- (*"Changzhou II"*).  Because CBP has not provided any additional information in the present case, the court will proceed under the assumption that all the Exemption 4 material was compelled or involuntarily provided.

[7]  CBP applied Exemption 4 to documents NL 001 - 023, 025, 027, 029 - 032, and 035 - 043.  Def.'s Mot., Exs. A, B.

would result in competitive harm to the submitters of the information.[8]  Courts have repeatedly

rejected competitive harm claims when they are advanced solely by the defendant agencies.  U.S.

DEP'T OF JUSTICE, FREEDOM OF INFORMATION ACT GUIDE & PRIVACY ACT OVERVIEW 316

(Pamela Maida, ed., May 2004); *see also Wiley Rein & Fielding v. Dep't of Commerce*, 782 F.

Supp. 675, 676 (D.D.C. 1992) (rejecting competitive harm claim because "no evidence" was

submitted to suggest that the companies themselves object to disclosure); *see also Brown v.

Dep't of Labor*, 1991 U.S. Dist. LEXIS 1780, at *7 (D.D.C. Feb. 15, 1991) (rejecting competitive

harm claim because submitters of information failed to protest the release of information).

Because CBP has not sustained its  "burden . . . to withhold records under Exemption 4," this

---

[8]  CBP argues for a blanket exemption for the entry documents based on two cases where
the courts found that entry documents were properly withheld pursuant to Exemption 4.  Def.'s
Mot. at 15.  However, in both those cases, the courts relied on detailed affidavits from the
submitters of the information to determine that competitive harm would result from disclosure.
*Inter Ocean Free Zone, Inc. v. United States Customs Serv.*, 982 F. Supp. 867, 872 (S.D. Fla.
1997); *Timken Co. v. United States Customs Serv.*, 531 F. Supp. 194, 197 (D.D.C. 1981).  Here,
CBP has not provided any affidavits from the individuals who submitted the information
regarding potential competitive harm.  Accordingly, the court finds the agency's arguments
unpersuasive.
     CBP also cites *Public Citizen*, 964 F. Supp. at 413, in support of its argument that the
commercial information should be exempt from disclosure.  However, in *Public Citizen*, the
submitter of the information intervened as a defendant in the case and presented extensive details
on the potential competitive harm that could resulted if certain information was publicly
disclosed.  *Id.* at 414.
      Furthermore, the court finds it difficult to understand why CBP redacted document NL
001 when the redacted information is readily available by searching the Registered Identification
Number ("RN") database on the Federal Trade Commission's website.  *See* Pl.'s Mot., Ex. F.
"No showing of competitive harm can be made if the information at issue is publicly available
through other sources."  *Public Citizen*, 964 F. Supp. at 415.
     CBP also improperly asserts Exemption 4 to withhold documents whose disclosure would
cause competitive harm, if any, only to plaintiff.  NL 027 is the CF 7512 filed in the "underlying
seizure case"; thus, it must contain information about the movement of Newry's merchandise.
Def.'s Mot. at 15.  "[T]o the extent that defendant's claim of Exemption 4 rests only on the need
to protect confidential information relating to the plaintiff or its merchandise, it must be
rejected."  *Changzhou*, 2005 WL 913268, at *6.

court finds that all documents and redactions withheld pursuant to Exemption 4 must be

released.[9]  *See FBI v. Abramson*, 456 U.S. at 622.

**D.      Exemption 5**

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would

not be available by law to a party . . .  in litigation with the agency."  5 U.S.C. § 552(b)(5).

"Exemption 5 [ ] exempt[s] those documents . . . normally privileged in the civil discovery

context. " *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975); *see also Martin v. Office of*

*Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987).  The rationalization for withholding

documents under Exemption 5 "rest[s] fundamentally on the conclusion that, unless protected

from public disclosure, information of [this] type would not flow freely within the agency."

*Mead Data Cent., Inc. v. Dep't of the Air Force,* 566 F.2d 242, 256 (D.C. Cir. 1977).  Three

privileges have commonly been recognized in the Exemption 5 context: the deliberative thought-

process privilege, the attorney-client privilege, and the attorney-work product doctrine.  *See*

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 682 (D.C. Cir. 1980).

CBP invokes the deliberative thought-process privilege.[10]  This privilege includes the

"decision making processes of government agencies." *Sears*, 421 U.S. at 150.  CBP asserts that

the redacted and withheld documents are internal memoranda or notes setting forth "the agency's

---

[9]  All the documents which CBP is withholding portions of under Exemption 4 also have
portions which are withheld under other FOIA exemptions.  "To the extent that these exemptions
are either not contested or the withholdings are found herein to have been properly invoked, these
portions need not be produced." *Changzhou*, 2005 WL 913268, at *4, n.4.

[10]  Documents NL 006 - 007 and NL 023 have been redacted in part under Exemption 5,
and NL 032 and NL 033 - 034 have been withheld in their entirety pursuant to Exemption 5.
Def.'s Mot., Exs. A, B.

theory of the case, and therefore constitute the agency's deliberative thought process." Stump

Decl. ¶ 38.  Newry contends that it "has a right to examine the documents relied upon by CBP . .

. ."[11]  Pl.'s Mot. at 8.  Newry's argument is misguided as the purpose of FOIA is not to serve as a

tool for discovery in its administrative forfeiture proceeding.  *Changzhou*, 2005 WL 913268, at

*7 (citing *Sears*, 421 U.S. at 144 ("The Act is fundamentally designed to inform the public about

agency action and not to benefit private litigants."); *Renegotiation Bd. v. Bannercraft Clothing*

*Co., Inc.*, 415 U.S. 1, 24 (1974) ("Discovery for litigation purposes is not an expressly indicated

purpose of the Act."); *Johnson v. Dep't of Justice*, 785 F. Supp. 2, 5 (D.D.C. 1991) ("[FOIA] is

not a discovery statute . . . .")).  As previously stated, FOIA's purpose is to make information

available to *the public.  See supra* note 2.  Thus, Newry's position as the entity whose

merchandise was seized has no bearing on its "right" to the documents in question.  Accordingly,

the court grants summary judgement to CBP regarding the documents and redactions withheld

under Exemption 5.

**E.     Exemption 7(A)**

Exemption 7(A) authorizes withholding "records or information compiled for law

enforcement purposes, but only to the extent that production of such law enforcement records or

information . . . could [ ] interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).

Records can be withheld under Exemption 7(A) if the agency (1) establishes that the law

enforcement proceeding is pending or prospective; and (2) shows that disclosure could interfere

with enforcement proceedings.  *NLRB v. Robbins Tire & Rubber Co.,* 473 U.S. 214, 244 (1978).

---

[11]  Newry also challenges the segregability of the documents withheld under exemption 5.
Pl.'s Mot. at 8.  This argument will be discussed in the segregability section of this opinion.

An agency need not detail the potential interference on a document-by-document basis. Rather, CBP may demonstrate the potential interference by grouping documents into relevant categories that are "sufficiently distinct to allow a court to grasp 'how each category of documents, if disclosed, would interfere with the investigation.'" *Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986) (quoting *Campbell v. Dep't of Health & Human Servs.*, 682 F.2d 256, 265 (D.C. Cir. 1982)).  The agency must (1) define the categories by function, (2) conduct a document-by-document review of responsive documents in order to assign documents to their proper category, and (3) explain how the release of each category could interfere with enforcement proceedings.  *Id.* at 1389-90.

The documents withheld pursuant to Exemption 7(A) contain "the names of suspects and/or witnesses as well as evidence collected during the investigation that supports CBP's case concerning the suspected scheme to effect the criminal entry of merchandise into the customs territory of the United States."[12]  Stump Decl. ¶ 44.  CBP categorizes all the documents that have been withheld pursuant to exemption 7(A) into this one category of evidence.  Def.'s Mot. at 25. Defendant also identifies each document that has been withheld under 7(A) in its *Vaughn* index, thus satisfying the second requirement of the *Bevis* test.  *See* Def.'s Mot., Ex. B.  Finally, CBP asserts that disclosing this information "could interfere with the ongoing investigation by alerting the suspects to the investigation and identifying . . . the nature of the evidence that has been identified and collected . . . also [such disclosure] . . . could generally inform the public as to the nature of evidence that is generally sought or scrutinized in this type of investigation."  Stump

---

[12]  Documents NL 025 - 043 are withheld pursuant to Exemption 7(A).  Def.'s Mot., Ex. B.

Decl. ¶ 44. This court has previously held that alerting targets of an investigation is sufficient to meet the third prong of the *Bevis* test. *See Cudzich v. Immigration and Naturalization Serv.*, 886 F. Supp. 101, 107 (D.D.C. 1995).[13] CBP has sufficiently pled its reasons for withholding documents under Exemption 7(A) and Newry has failed to make any valid arguments in opposition. Accordingly, this court grants summary judgment to CBP regarding Exemption 7(A).

**F.      Segregability and Adequacy of Vaughn Index**

Newry maintains that CBP has failed to disclose all reasonably segregable portions of withheld documents. Because Newry's "reasonably segregable" assertion is based on the alleged inadequacy of the *Vaughn* index, the court will address these two issues collectively.

FOIA requires that "any reasonably segregable portion of a record [ ] be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). This circuit has held that "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent.,* 566 F.2d at 260. Furthermore, the agency must provide "detailed justification[s]" rather then "conclusory statements," but should not "be forced to provide such a detailed justification that would itself compromise the secret nature of potentially exempt information." *Id.* at 261.

---

[13] Newry does not dispute that there is an ongoing investigation, or that releasing the information could interfere with the investigation. Rather, Newry argues that because the investigation relates to third parties, the documents should be released to it. Pl.'s Reply at 10. However, as previously discussed, Newry's position in relation to the underlying investigation has no bearing on its access to information under FOIA. FOIA is designed to disclose information to the public, and is not a tool for discovery.

The *Vaughn* index must expressly indicate that any reasonably segregable portion of each document has been disclosed. *See Isley v. Executive Office for United States Attorneys*, 1999 WL 1021934, at *7 (D.C. Cir. Oct. 21, 1999). An adequate *Vaughn* index will enable the requester of the information and the trial judge to obtain a clear explanation of why each document or portion of a document is withheld and exempt from disclosure. *See Jones v. FBI,* 41 F.3d 238, 242 (6th Cir. 1994) (holding that an agency's *Vaughn* index is adequate as long as it "'enables the court to make a reasoned independent assessment of the claim[s] of exemption'" (quoting *Vaughn v. United States*, 936 F.2d 268, 266-67 (6th Cir. 1991))).

Newry maintains that CBP's declaration and *Vaughn* index are vague and lack specificity because they fail to "correlate the theories of exemptions with the particular textual segments which it desires exempted." Pl.'s Reply at 11. This court has reviewed the *Vaughn* index, the Stump Declaration, and the partially disclosed documents which were attached to Newry's motion. CBP clearly indicates on each of the partially disclosed documents which exemption applies to each redaction. *See* Pl.'s Mot., Ex. E. The *Vaughn* index further identifies what type of information has been redacted in each document and under what exemption. The Stump Declaration then expands on the reasoning for each exemption and the applicable law. Thus, Newry's claim that CBP has failed to identify which exemption applies to each redaction lacks merit.

Regarding documents that have been withheld in their entirety, CBP explains that "[d]ocuments were withheld in full either because all the information contained in the documents was exempt from disclosure or the redaction of exempt material would have left only mere templates or unintelligible or meaningless words and phrases because such non-exempt

information was so inextricably intertwined with exempt material." Supplemental Stump. Decl. ¶ 10.  CBP then goes on to explain the nature of each document withheld in its entirety and the rationale for doing so.  *Id.* ¶¶ 11-13.  This information is sufficient for the court to determine if any reasonably segregable portions were not properly disclosed.  Accordingly, CBP has met its burden of demonstrating that it has released all reasonably segregable portions of documents.[14]

### III. CONCLUSION

For the aforementioned reasons, it is this __ day of July, 2005, hereby

**ORDERED** that CBP's motion for summary judgment is **DENIED** with respect to withholdings under Exemption 4 and is otherwise **GRANTED**; and it is further

**ORDERED**, that Newry's motion for summary judgment is **GRANTED** with respect to withholdings under Exemption 4 and is otherwise **DENIED**; and it is further

**ORDERED**, that CBP shall disclose all records previously withheld under Exemption 4 within 30 days of the filing of this order.

Henry H. Kennedy, Jr.
United States District Judge

---

[14] CBP should release all reasonably segregable portions of records withheld under Exemption 4, as the court has ruled for plaintiff on the applicability of this exemption.